Brady, J.
The defendant applies to be discharged from imprisonment under section 802 of the Code. He was committed under the provisions of the act of 1831 to , abolish imprisonment for debt, and to punish fraudulent * debtors {Laws of 1831, 396), for fraudulently contracting the debt due to the plaintiff, and for fraudulently disposing of his property.
He has applied to be discharged as an insolvent *220 debtor, and failed, under a decision of this court (Matter of Watson, 2 E. D. Smith, 429), because, having disposed of his property with intent to defraud his creditors, his proceedings were not just and fair. He has also sought to be discharged by various motions and- proceedings, all of which have been unsuccessful. He has also been subjected to involuntary bankruptcy under the laws of the United States, and one of his judgment creditors insists that by a voluntary escape the sheriff has become liable; that he is not properly' in duress, and, therefore, not entitled to any consideration as an imprisoned debtor. He seems to be flanked on all sides, and, so far as I can discern, unless he can pay the debts for which he is held, or give the bond for which provision is made by the act of' 1831 {supra), or be relieved under a provision in section 302 of the Code, upon which he relies, and to be hereafter considered, nothing, but failing health and consequent inability longer to endure imprisonment, can accomplish his release.
He has been in confinement since December, 1867, and having essayed in various ways to be discharged as already suggested, as a last resort applies to be liberated under section 302, on two grounds :
First. Because he cannot perform the act required ; and, Second. Because (if his case is not within that feature of the section) he cannot endure longer imprisonment.
The Revised Statutes (2 Rev. Slat., 538, as amended, Laws of 1843, ch. 9) in reference to proceedings to punish for contempt, provide that in all cases which have arisen or may thereafter arise under the provisions of that title, the court or tribunal ordering such imprisonment (as a punishment for contempt) may in their discretion, in cases of inability to perform the requirements imposed, relieve the person or persons so imprisoned, in such manner, and upon such terms, as they shall deem just and proper. Section 302 of the Code, prior to 1851, had no kindred provision. It was amended, however, in that year, and it was declared that in all cases of commitment under the chapter “Proceedings Supplementary *221 to Execution,” or the act to abolish imprisonment for debt, “ the person committed may, in case of inability to perform the act required or to endure the imprisonment, be discharged from imprisonment by the court or judge committing him, or the court in which the judgment was rendered, on such terms as may be just.”
The first question presented on this application is, what is the effect of the words “inability to perform the act required,” in reference to a commitment under the act of 1831, which is a general commitment, and contains no specification of the thing to be done by the debtor to accomplish his release.
In order to arrive at a proper conclusion upon that subject, it is important to keep in view that in the construction of statutes it is a primary rule that the intention of the legislature is to be collected from the words of the statute ; but when the words are not explicit, it is to be gathered from the occasion and necessity of the law,—the defect of the former law, and the designed remedy, being the causes which moved the legislature to enact it (Dwarris on Stat., 562).
The commitment, as already stated, is general. It is until the debtor is discharged according to law (§ 9). The effect of the law of 1831 is, according to the decision in the Matter of Watson (supra), that the debtor who is committed for fraudulently disposing of his property cannot successfully petition for his discharge as an insolvent, though ready to assign all his property as contemplated, inasmuch as his proceedings “are not just and fair,” and he is not, therefore, within its benefits. The result is, that if unable to do what is otherwise required to obtain his discharge, he must remain in prison at the mercy of his creditor, and until he can no longer endure his confinement, which may extend over a period of years. It is not necessary, and yet not improper, to say that this is a serious result of the statute and the decision referred to, and one which it is fair to assume the legislature anticipated by the act of 1851, and intended to remedy. Assuming the premise to be correct, that the *222 object of the amendment to section 302 of the Code was as stated then, unless inability to perform the act required means required by the provisions of the act to abolish imprisonment for debt and to punish fraudulent debtors, in order to be discharged, then the statute fails to accomplish any purpose, and is a dead letter. It is to be observed, also, that that species of legislation is remedial, and as such should be liberally construed. When a debtor is committed under the act mentioned, he cannot be liberated unless judgment be rendered in his favor, or he be permitted to make an assignment of his property, or pay the debt, or give the security required by sections 10 and 11. The defendant has been prevented from making the assignment by reason of the decision to which reference has already been made. The plaintiff has recovered judgment against him, and if he cannot pay the debt or give the security, his case is one clearly of inability to perform the act required. If there existed any power to commit a debtor under the act of 1831, until he did some specific act, such as may be done under the proceedings to punish for contempt, then section 302 might be held to apply to the particular commitment under which he is held. No such power exists, and the commitment is general, as already stated, whenever it is adjudged that the debtor is guilty of any one of the charges which justify his arrest,—that he has done, or is about to do, any one of the acts specified in section 4 of the act (§ 9).
It may be said, in answer to this view, that if such a construction be adopted, a debtor may be committed under the act of 1831, and be discharged under section 302 of the Code, immediately. I answer that the argument is cogent, but it equally applies to punishments for contempt. The person in contempt may immediately apply to be discharged from inability to perform. The statute does not create any period of probation. Nei-' ther the debtor, however, nor the person in contempt, can claim his discharge as a matter of right. He appeals to the discretion of the judge or court, and it is not *223 likely that an immediate application would meet with success.
But whatever may be said on that subject, the legislature intended in both cases, in my judgment, to leave the person held in duress to the mercy of the court, and in view of the settled principle that an erroneous exer■cise of discretion, like the improper use of power in other cases, is subject to review and correction. The cases arising under the two statutes, namely, to punish for contempt and to punish fraudulent debtors, are kindred in their results, inasmuch as the release of the person imprisoned may often depend upon similar requirements, such as the payment of money, the giving of security, or the giving up or appropriation of property unjustly secreted or withheld. It is the duty of a- court to give effect to every statute which has not been repealed directly or by implication, and in doing so to carry "out the object of its enactment. Unless it be held that that part of the amendment to section 302 under consideration, has the object expressed, then it fails to accomplish any purpose, and has no vitality. My convictions are that it should be made effective. If the committed debtor cannot pay the debt, or give security or make the assignment, he cannot perform the act required by the law of 1831 (szvpra), to enable him to obtain his release, and may be discharged for that reason.
Having arrived at this conclusion, the next question is whether the defendant should be discharged, and upon what terms. I do not consider him unable to endure the imprisonment on the proofs submitted, and do not design to say more than this on that subject.
There can be no doubt that he was properly commitmitted, and for frauds which he had practiced. I am satisfied that he shipped large quantities of the goods purchased by him to Havana, either upon sales thereof, or to some person who was to hold or sell them for his benefit, and I am inclined to think that the proceeds of them are to some extent still attainable. In what man *224 ner they may be reached I am nnable to state. I am also of the opinion that he has not been as communicative as he should have been to the assignee in bankruptcy, to whom he should have freely and fully disclosed all his assets. I am also of the opinion that there are some persons in this vicinity who can aid him, and will do so, upon his earnest application for assistance by way of security or otherwise. Entertaining these opinions and convictions, I do not feel disposed to discharge him on this application. He did not answer fully, or even to a reasonable extent, the charges made against him as to the possession of money and property subsequent to his commitment, or present a strong case on the subject of his inability longer to endure imprisonment. It may be that he can present his case in a better light on a further application, which I intend he shall have the right to make; and I grant it because of his long confinement, and the extraordinary circumstances which surround him.
This motion will therefore be denied, with liberty to renew on further proofs, and on the payment of $30 costs.